Land Title Bank and Trust Company *v.* Stout et al. (Intervener, Appellant).

Argued May 13, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

John Harper, with him Philip B. Driver, Jr., for appellant.

Paul W. Knox, of Rambo, Rambo & Knox, for appellee.

OPINION BY MR. JUSTICE BARNES, June 24, 1940:

The question here involved is whether a conditional vendor may remove elevators installed in an apartment house under a conditional sales agreement, or whether they became part of the freehold and bound by the lien of a prior mortgage on the premises.

Cliveden Hall, the mortgaged property, is a five-story, brick apartment building located at Lincoln Drive and Cliveden Street, in Philadelphia. The mortgage was executed on April 1, 1926, by J. Irwin Stout, as title holder for the real owner, the Linclive Realty Corporation, to the West End Trust Company, trustee for

bondholders, as security for the payment of the principal sum of $525,000. The Land Title Bank and Trust Company, the plaintiff in this action, is the successor to the original trustee.

In addition to the usual all-inclusive terms embracing the realty, its improvements and appurtenances, the mortgage contains a specific provision including within its lien, "elevators . . . and machinery, appliances, plants, apparatus, fittings and fixtures of every kind in any building now or hereafter standing on said premises . . . and constituting a part of the plant thereof and/or used in its operation as an apartment building."

After the execution and recording of the mortgage, the Atlantic Elevator Company entered into a conditional sales agreement with the Linclive Realty Corporation for the installation of three electric elevators on the premises. The contract provided that the elevators should remain the property of the vendor until full payment of the purchase price was made, and authorized their removal in the event of a default. This contract was recorded on June 12, 1926, in accordance with the requirements of the Act of May 14, 1925, P. L. 722. Although the conditional vendor had notice of the existence of the prior mortgage, it made no effort to obtain the mortgagee's assent to its reservation of property in the machinery and equipment.

The elevators were installed on the premises during June, 1926, in fireproof shafts and connecting rooms designed especially for that purpose, with part of the machinery located in a penthouse on the roof of the building. The cars were operated from the first to the fifth floor, and from the basement to the fourth floor in that part of the structure which is four stories high, traveling in each instance a vertical distance of forty-two feet six inches. They were placed in operation following their installation and served the tenants of the building for several years.

In March, 1927, receivership proceedings were instituted in the United States District Court against the Linclive Realty Corporation, and a receiver was appointed who managed the apartment house until January, 1934, when it was abandoned as an unprofitable enterprise. Although payments for the elevators were in default, the vendor refrained from asserting any claim thereto until February, 1934, when a reclamation petition was filed in the receivership proceedings. No action on the petition was taken, and the receiver was discharged on December 7, 1937.

On August 28, 1939, the plaintiff as trustee filed the present bill in the court below to foreclose the mortgage, and subsequently obtained judgment against the defendants. Thereafter, the Atlantic Elevator Company was granted a rule upon the plaintiff and defendants to show cause why it should not be permitted to intervene and assert its claim to the possession of the elevators under the conditional sales agreement, upon which a balance of $4,930 is due. After hearing upon petition and answer, the court below entered an order discharging the rule, from which this appeal was taken by the elevator company.

The principal contention of the vendor is that the elevators may be removed from the building without damage to the freehold, and that they are personal property, protected from the lien of the mortgage by the Act of 1925, supra, under which the contract was filed. The trustee resists this claim upon the ground that the mortgage lien embraced the cars and equipment as part of an operating business establishment, and that the vendor has no standing to seek equitable relief because it has been guilty of laches.

In considering the merits of the issue between the parties it must be borne in mind that the Act of 1925, supra, upon which the conditional vendor relies, is an enactment in derogation of the common law insofar as it purports to fix by contract the character of fixtures

annexed to the realty. However, Section 2 of the Act provides: "As against a prior mortgagee or other prior encumbrancer of the realty, who has not assented to the reservation of property in the chattels, if any of the chattels are so attached to the realty as not to be severable without material injury to the freehold, the reservation of property in the chattels so attached shall be void, notwithstanding the filing of the contract or statement. . . ."

As the conditional vendor in the present case failed to obtain the mortgagee's assent to the reservation of property in the elevators, the question arises whether they may be removed "without material injury to the freehold," within the meaning of the Act, otherwise the agreement is void as against the mortgagee. The words "material injury to the freehold" have been construed by this Court to mean injury to the building as an operating plant, rather than injury to the physical structure.

In *Cent'l Lith. Co. v. Eatmor Choc. Co. (No. 1)*, 316 Pa. 300, we held that machinery and equipment in a manufacturing establishment installed for permanent use as an integral part of an operating plant were subject to the lien of a mortgage upon the realty, despite the fact that the seller of these articles had reserved property in them, as chattels, under a recorded conditional sales agreement. Interpreting Section 7 of the Conditional Sales Act of May 12, 1925, P. L. 603, which is essentially identical with Section 2 of the Act of May 14, 1925, P. L. 722, here involved, we said (p. 304) : "We think that the lower court's view of what is included in the terms 'realty' and 'freehold' as used in the act is too restricted, and the fact that the machinery can be removed without material injury to the building, not the controlling consideration. . . . We think they imply much more,—that the word 'freehold' as used in the act embraces the entire operating plant and is used as Chief

Justice GIBSON used it in *Voorhis v. Freeman,* 2 W. & S. 116.. . ."

*Voorhis v. Freeman,* supra, established the Pennsylvania doctrine that a mortgage upon a business or industrial establishment embraces, as part of the freehold, all of the fixtures, machinery and equipment upon the premises intended for permanent use as a necessary and integral part of the operating plant.

The conditional vendor's contention that this rule is applicable only to mortgages upon manufactories is based upon a misconception of the effect of our decisions. The doctrine is not limited in its scope to that particular type of establishment. It is not an arbitrary rule of convenience, but a realistic interpretation of the intention of the parties to the mortgage. It is a recognition that the terms 'realty' and 'freehold' include such appurtenances as give value to the real estate for the purpose of securing the mortgage loan. Thus, in the case of manufacturing plants we have pointed out that it is the machinery and equipment which convert the four walls of the factory building into a valuable industrial property. If these were to be taken away, little would remain of the mortgagee's security.

The rule has been applied not only to manufacturing establishments, but to other industrial operations such as coal mines *(Titus v. Poland Coal Co.,* 275 Pa. 431) and stone quarries *(McClure v. Atlantic Rock Co.,* 339 Pa. 296) ; and see *Williams Pat. Crusher Co. v. Reily,* 118 Pa. Superior Ct. 64. In *Bullock Elec. Mfg. Co. v. Lehigh Valley T. Co.,* 231 Pa. 129, a mortgage upon the power plant of a street railway was held to embrace generators installed under a conditional sales agreement. We said (p. 138) : "The situation is necessarily different where the machinery sold is intended to be permanently attached to a building, or power plant, as an integral and component part of the construction necessary in conducting the business for which

the structure was erected." And see *Holland Furnace Co. v. Suzik,* 118 Pa. Superior Ct. 405, 409.

In a case closely analogous to the one now before us, *Medical Tower Corp. v. Otis Elevator Co.,* 104 F. (2d) 133, the Circuit Court of Appeals for the Third Circuit held that elevators in an office building must be considered part of the freehold within the meaning of our Conditional Sales Act. The court discusses the Pennsylvania rule and says (p. 136) : "It is no departure from this rule, but rather adherence to it, to hold that elevators are so indispensable to the operation of a thirty-story office building as a single or operating unit that the utilization of the realty for the purpose intended is destroyed by the removal of those elevators and that, therefore, the elevators must similarly be considered as constituting part of the realty or freehold."

It seems clear to us that the mortgage now held by the plaintiff trustee was intended to encumber the apartment house as an operating establishment, and that the elevators were designed for permanent use as a necessary adjunct to the enterprise. Not only is this established by the express language of the mortgage itself, but the court below has found that "the four elevators installed by petitioner are an integral and essential part of the operating plant of Cliveden Hall as an apartment building. By operation is meant practical if not necessarily successful operation. While doubtless some use could be made of the building without elevators, there would be gaping shafts empty of elevator equipment. The integrity of the business structure as it was planned and constructed would be destroyed by the removal of such means of transporting the tenants and the staff." With this conclusion we are in complete accord. It follows, therefore, that the elevators and their equipment are part of the freehold and subject to the lien of the mortgage.

In view of the conclusion which we have reached, it is unnecessary to pass upon the question of laches. The

long delay of the vendor in asserting its claim to the elevators serves however to strengthen our conviction that our present decision will create no injustice. When the equipment was installed, the vendor had notice that plaintiff's mortgage expressly embraced appurtenances of that type. As we said in *Cent'l Lith. Co. v. Eatmor Choc. Co. (No. 1),* supra, (p. 309) : "Our holding as we do now can work no hardship on conditional sellers. Before they make delivery of their property to a purchaser whose plant is bound by a mortgage, all they need do to protect themselves, is to get the assent of the mortgagee to the removal of the articles in the event of default by the purchaser in his payments."

The decree of the court below is affirmed. Costs to be paid by appellant.