Matter of Samuel GINSBURG, Individually and Trading as Jee-Jee Food Products, Bankrupt,

Commercial Banking Corporation, Appellant.

No. 12358.

United States Court of Appeals Third Circuit.

Argued Feb. 18, 1958.

Decided May 7, 1958.

Irving J. Katz, Philadelphia, Pa., for appellant.

Melvin Lashner, Philadelphia, Pa. (Miller, Adelman & Lavine, Philadelphia, Pa., on the brief), for trustee, William J. Eastwood, appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from the affirmance by the District Court of the Order of the Referee in Bankruptcy denying secured status to a creditor seeking to assert its judgment lien against machinery and equipment ("machinery") in a building owned by the bankrupt and used by him for processing and packaging foods for wholesale.

The sole question presented is whether this machinery constituted real estate within the reach of a judgment lien.

The facts briefly stated are as follows:

The Commercial Banking Company ("Commercial") obtained a recorded judgment[1] against Samuel Ginsburg and Esther Ginsburg, his wife, in the amount of $5,906.86 on December 8, 1955, more than four months prior to the filing of a petition in bankruptcy. By virtue of this judgment Commercial obtained a lien against the real estate, the premises located at 1224–26–28 Parrish Street, Philadelphia, Pennsylvania, where

---

1. Court of Common Pleas No. 3, No. 618, December Term, 1955.

the bankrupt, Samuel Ginsburg, trading as Jee-Jee Food Products, operated his food processing and packaging plant.

On May 15, 1956, an involuntary petition in bankruptcy was filed against the bankrupt. In the proceedings which followed, Commercial claimed secured status, asserting that its judgment became a fixed lien on the Parrish Street property prior to the initiation of bankruptcy proceedings. After the Trustee in Bankruptcy abandoned title to the property because of numerous encumbrances which exhausted the equity of the bankrupt estate, Commercial took the position that its lien extended to all property attached to and forming part of the real estate, and, more specifically, to four pieces of machinery which the bankrupt installed prior to the entry of judgment and which were in the premises at the time of bankruptcy.

With respect to the above real estate and machinery, the bankrupt testified that he purchased the Parrish Street property in 1953 for the purpose of establishing a permanent plant; that the machinery in question which had been purchased in prior years and used at other locations was thereafter installed; that he intended to permanently affix the machinery to the property at the time of annexation because of the possibility of damage occasioned by frequent moving; and that all the machinery was essential to the operation of the plant.

The testimony further discloses that the heavier machinery—a Curlee spreader and a Govatsos wrapper—was bolted to a specially recessed area in the concrete floor to prevent vibration and that the locations were chosen with a view to the installation of additional machinery. These and the other machines were also attached to the real estate by pipes used to carry electric current and by conventional electric wiring.

The four items in question were sold at public sale and removed without injury to the real estate. Commercial objected to the confirmation of the sale by reason of its claimed lien; as a result the bids made for the purchase of the machinery were withdrawn. Thereafter, by consent of the parties, the machinery was sold for a total consideration of $4,900.00. Commercial accordingly filed an amended proof of secured claim asserting that its lien attached to the entire proceeds of sale.[2]

The Referee, in his opinion, made this statement with reference to the premise of Commercial's claim:

"Commercial asserts its lien on these pieces of equipment on two theories—first, the equipment constituted permanent fixtures and became a part of the real estate at the time they were installed in the real estate; second, that even if the items of equipment are termed to be personal property, they must be considered as realty under the 'Assembled Industrial Plant Doctrine' in effect in Pennsylvania."

With respect to these two "theories" the Referee made these factual findings: all four pieces of machinery were "trade fixtures"; they were "freely movable"; the "bankrupt intended to move the articles out of the building in the event that he ever moved his business from the building"; the "business of the bankrupt was not that of a manufacturer" and he "did not conduct a mill or industrial plant" and that "all of the said articles are personalty property, and not real estate."

Without specifying the particular "theory" at which they were directed, the Referee stated the following Conclusions of Law:

"1. The bankrupt was not engaged in any manufacturing business within the meaning of the Assembled Plant Doctrine Bill of Pennsylvania.

---

2. The amended Proof of Claim filed by Commercial mistakenly alleged that the proceeds of the sale totaled $4,850.00 and made claim "to the entire fund of $4,850.-00".

"2. The four pieces of equipment upon which a lien is claimed are all items of trade fixtures.

"3. None of the foregoing pieces of equipment became a part of the real estate of premises 1224–26–28 Parrish Street, Philadelphia, Pa.

"4. The Commercial Banking Company did not acquire any lien on the four pieces of equipment in question by virtue of the judgment obtained in the State Court."

It is clear from the Referee's opinion that he construed the Pennsylvania law as limiting the applicability of the assembled industrial plant doctrine to manufacturing establishments and that he accordingly refused to apply the doctrine because of his fact-finding [3] that the bankrupt was not a manufacturer.

Anent his holding that "The Assembled Industrial Plant Doctrine was not applicable in this case" the Referee stated:

"However, the Industrial Plant Doctrine applies only to manufacturing establishments. * * * In order to constitute a plant as a manufacturing plant, the plant must be engaged in the creation of new articles by the substantial transformation in form, quality and adaptability of original material."

The Referee erred as a matter of law in ruling that the Pennsylvania assembled industrial plant doctrine is limited in its application to manufacturing establishments.

The Supreme Court of Pennsylvania in United Laundries, Inc., v. Board of Property Assessment, 1948, 359 Pa. 195, 58 A.2d 833, 834, specifically held that the assembled industrial plant doctrine applied to machinery and equipment of a commercial laundry and carpet cleaning establishments, concededly "neither mills nor manufactories."

In that case, the machinery and equipment of the separate properties of four laundry companies and a carpet cleaning establishment, "consisting of ironers, tumblers, dryers, washers, extractors and pressers required in laundering articles of clothing, etc., and of rug beater, sewing machine, washing machine and wringer used exclusively for washing and cleaning rugs and carpets" were held to be "a part of the realty."

In doing so the Court (359 Pa. at page 198, 58 A.2d at page 834) subscribed to the contention that " * * * the character of the machinery and equipment, as articles of personal property, is changed and they become part and parcel of the real estate to whose industrial use they are necessary * * * " citing Titus v. Poland Coal Co., 1923, 275 Pa. 431, at pages 436, 437, 119 A. 540, at page 542, in which the assembled industrial plant doctrine was succinctly spelled out as follows:

"The Pennsylvania rule is that a chattel placed in an industrial establishment for permanent use, and necessary to the operation of the plant, becomes a fixture, and as such a part of the real estate, although not physically attached thereto; *in other words, if the article, whether fast or loose, be indispensable in carrying on the specific business, it becomes a part of the realty * * *.* (Emphasis supplied.)

The foregoing, it was stated in the United Laundries case in 359 Pa. at page 199, 58 A.2d at page 835, defined " * * what constitutes an integral unit of real estate under the [general property law of Pennsylvania]".

In Land Title Bank & Trust Company v. Stout, 1940, 339 Pa. 302, 14 A.2d 282, the Supreme Court of Pennsylvania held that elevators in an apartment house were "realty". In doing so it stated (339 Pa. at page 307, 14 A.2d at page 284):

"Voorhis v. Freeman, supra [2 Watts & S., Pa., 116] established the Pennsylvania doctrine that a mort-

---

3. Finding of Fact No. 10. "The business of the bankrupt was not that of a manufacturer."

Finding of Fact No. 12. "The business of the bankrupt was that of packaging and preparing food for sale."

gage *upon a business· or industrial. establishment* embraces, as part of the freehold, all the fixtures, machinery and equipment upon the premises intended for permanent use as a necessary and integral part of the operating plant. ·

"The conditional vendor's contention that this rule is applicable only to mortgages upon *manufactories* is based upon a misconception of the effect of our decisions. *The doctrine is not limited in its scope to that particular type of establishment * * * ".4 (Emphasis supplied.)

· In First National Bank of Mt. Carmel v. Reichneder, 1952, 371 Pa. 463, 466, 467, 468, 91 A.2d 277, the Pennsylvania Supreme Court, cited with approval the United Laundries, Titus and Voorhis cases, above discussed, as illustrations of the application of the "integrated industrial plant doctrine."

It may be noted that the First National Bank of· Mt. Carmel case is the latest expression of the Supreme Court of Pennsylvania on the assembled industrial plant doctrine, and its holding, ·in accord with its earlier decisions, is of course controlling here on the score. of the Referee's erroneous determination that the applicability of the doctrine is limited to "manufacturing establishments".

It must be observed that in addition to finding that the business· of the bankrupt was *not* that of a "manufacturer" (Finding of Fact No. 10), the Referee also made the fact-finding (No. 11) that "The bankrupt did not conduct a mill or an industrial plant" and the further fact-finding (No. 12) that "The business of the bankrupt was that of packaging and. preparing food for sale."

Finding of Fact No. 10 is irrelevant to the issue here since the assembled industrial plant doctrine is not limited to manufacturing establishments. Finding of Fact No. 11, that the bankrupt did not

conduct an "industrial plant" evidences a mistaken conception on the part of the Referee as to the meaning of the term "industrial".

"Industrial", as defined by Funk & Wagnalls New Standard Dictionary of the English Language, means "of or pertaining to industry or labor; denoting the processes or products of manufacture *or commercial production in general.*" (Emphasis supplied.)

The record indisputably establishes that the bankrupt was engaged in processing food for sale and if laundering and carpet cleaning operations are within the scope of the assembled industrial plant doctrine, as was held in the United Laundries case, food processing operations are no less so.

There remains for disposition two other points.

As to the first:

· The Referee in his opinion, found that "None of the four pieces of equipment can be considered as permanent fixtures attached to, made a part of, and forming part of the real estate" because, "Each of the pieces of equipment is a trade fixture brought upon the premises for the purposes of the conduct of the bankrupt's business, and *intended to be removed from the premises in the event of any cessation of the bankrupt's business, or a sale of the premises by him.*" (Emphasis supplied.)

Consonant with the foregoing, the Referee made the specific finding of fact (No. 8) that "The bankrupt intended to move the articles out of the building in the event that he ever moved his business from the building."

The Referee erred in two respects on the score of "intent", first, in his construction of the Pennsylvania law relating to "intent" and, second, his fact-finding as to "intent" was not only unsupported by the evidence but directly contrary to it.

---

4. The Pennsylvania Supreme Court in that case cited with approval our holding in Medical Tower Corporation v. Otis Elevator Co., 3 Cir., 1939, 104 F.2d 133, that

elevators in an office building constituted part of the realty under Pennsylvania law.

The Pennsylvania case books abound with statements that the "intent" as to permanent use of machinery or equipment placed on property relates to "intent" at the time of placement.

In Kinnear v. Scenic Railways Company, 1909, 223 Pa. 390, at page 397, 72 A. 808, 810, the Court stated:

"The intention which controls and determines, whether or not a chattel is annexed and becomes a part of the real estate *is the intention of the party at the time it was placed on the property.* Vail v. Weaver, 132 Pa. 363, 19 A. 138; Carver v. Gough, 153 Pa. 225, 25 A. 1124." (Emphasis supplied.)

To the same effect see the recent case of Royal Store Fixture Co. v. Patten, 1957, 183 Pa.Super. 249, 252, 253, 130 A.2d 271, 273, citing with approval Clayton v. Lienhard, 1933, 312 Pa. 433, 436, 437, 167 A. 321, where the doctrine was spelled out in detail and stressed " * * the intention of the parties at the time of the annexation * * * "

In the instant case the Referee made no finding with respect to "intention * * * at the time of the annexation". While he found an intention to remove the machinery in the event of contingencies (such as sale of the building or removal of the business) he did not find the intention existed at "the time of annexation". The record discloses that such finding as was made on the score of intention was premised on the following testimony of the bankrupt at the final meeting of creditors to audit the trustee's first and final account on March 13, 1957—four years after the machinery was placed in the building which he bought in 1953.

Cross-examination of the bankrupt by Mr. Lavine, counsel for the trustee in bankruptcy (pp. 22–23 N.T.):

"Q. You say when you put these machines there you meant them to be there permanently? A. Yes.

"Q. Suppose you sold this building, to someone who was not going into the business. What would you do with these machines? A. That is supposition. I bought the—

"By the Referee: Q. Don't argue. What would you do with the machines if you sold the building? A. I would sell the building with the understanding that whoever bought the building, either I would have to do the fixing up or somebody else would have to do the fixing up.

"By Mr. Lavine: Q. Suppose you didn't like the building yourself and wanted to move to a different neighborhood and still be in the business. Would you take the machinery with you? A. By all means I would take the machinery with me."

It is clear from this testimony that the questions and answers as to what might have happened to the machinery in the event of a sale of the building (which never took place) or the bankrupt's removal of his plant to a new location (which never took place) had no relation to the bankrupt's intention with respect to the machinery at the time he installed it in his plant, and it is that intention alone which is critical.

Not only on the cross-examination quoted did the bankrupt declare that it was his intention "to put these machines there * * * [and] meant them to be there permanently" but he also did so several times on his direct examination.

Directly bearing on the bankrupt's intent with respect to the machinery at the time of placement are the following excerpts from his testimony:

At p. 7 N.T.:

"Q. Approximately when did you purchase that real estate? A. In 1953 I think.

"Q. What was your purpose in buying that real estate? A. Well, we bought the real estate so that we could get better equipment and to put equipment in there so we would not have to move it from one place to another—.

* * * * *

At pp. 11–12 N.T.:

"Q. When you placed that machine in your plant, what was your intention with regard to whether it was to be part of your plant or what it was to be? A. It would be a permanent spot for it. That is why I bought the building.

"Q. When you affixed it to the building did you consider it was to stay there permanently? A. Yes.

\* \* \* \* \*

At p. 14 N.T.:

"Q. \* \* \* When you moved to your plant and you put all these machines in there, what was your intention? A. To stay there.

"Q. What was your intention with regard to the machines as respects the real estate? A. Well, as far as I was concerned, I just bolted it into the ground so it would stay there permanently. I had no intention that anything would happen to me. I just bolted it into the ground, dug out the ground and bolted it to the real estate."

As to the second point remaining for disposition:

Counsel for the appellee, the trustee in bankruptcy, contends that only a mortgagee can invoke the operation of the assembled industrial plant doctrine and that it is not available to a judgment creditor such as Commercial.

The contention is utterly without merit.

■ Almost a century ago the Supreme Court of Pennsylvania in Witmer's Appeal, 1863, 45 Pa. 455, held that with respect to realty and fixtures which are part of it there is no difference "betwixt a mortgagee and a judgment-creditor".

In doing so the Court stated (at page 463):

"The mortgagee has no estate in the land, any more than the judgment-creditor. Both have liens upon it, and no more than liens. \* \* \*

"As to estate and interest, then, no substantial difference exists between these two classes of creditors: diversities that do exist, have reference to the extent and duration of the liens and the remedies for enforcing them. If a mortgagee have an interest in the mortgaged premises, *which may be defrauded by a severance and sale of a fixture, so we may conclude, has a judgment-creditor.*" (Emphasis supplied.)

In Havens v. Pearson, 1939, 334 Pa. 570, 576, 6 A.2d 84, 122 A.L.R. 512 the Pennsylvania Supreme Court cited and applied the rule stated in Witmer's Appeal.

Moreover, the District Court for the Eastern District of Pennsylvania, the forum of the instant litigation, has applied Witmer's Appeal in bankruptcy proceedings. See In re Beeg, D.C.E.D. Pa.1911, 184 F. 522, 524, where the lien of a judgment-creditor against fixtures held to be part of the realty was enforced. There the Court cited Witmer's Appeal and subscribed to its holding that there is no difference between "the lien of a mortgagee or judgment-creditor", as to realty and fixtures which are part of it. See also In re Newport Planing Mill Co., Inc., D.C.M.D.Pa.1931, 46 F.2d 656.

The foregoing has constrained us to the determination that the Referee's findings of fact as to the bankrupt's intention at the time of placement of the machinery in his building, the character of the machinery and the nature of the bankrupt's enterprise were clearly erroneous and that he erred as a matter of law in failing to hold applicable the Pennsylvania assembled industrial plant doctrine.

■ In our opinion the record establishes that the machinery was a part of the realty under the Pennsylvania assembled industrial plant doctrine and as such was subject to the judgment lien of Commercial.

For the reasons stated the Order of the District Court affirming the Order of the Referee will be reversed and the cause remanded with instructions to proceed in accordance with this Opinion.