

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Robert Salinas
Criminal District Attorney Pro Tem
Hidalgo County Courthouse
Edinburg, Texas   78539

Opinion No. MW-552

Re:  Application of article 4477-1, V.T.C.S., minimum health standards to farms and farm workers; and related questions

Dear Mr. Salinas:

You have asked if article 4477-1, V.T.C.S., and Texas Department of Health "Occupational Health Regulation No. 2" are applicable to farmers and ranchers and their workers. The statute, enacted in 1945, establishes "minimum requirements of sanitation and health protection within the State of Texas." V.T.C.S. art. 4477-1 §23; Acts 1945, 49th Leg., ch. 178, at 234. The regulation, now codified as sections 289.21 through 289.31 in title 25 of the Texas Administrative Code, was first promulgated in 1957.

Article 4477-1, V.T.C.S., is generally applicable to the entire state and to all of the people and legal entities in it. The statute provides in section 4(a), for instance, that "all premises" occupied or used for residential, business, or pleasure purposes be kept in a sanitary condition. But some of its requirements are expressly applicable only to facilities or operations of a special type. See, e.g., section 15 (swimming pools and bath houses), section 16 (school houses and grounds), section 17 (tourist courts, hotels, inns and rooming houses), section 18 (fair grounds, public parks and amusement grounds), and section 19 (industrial establishments). Farms, ranches, and fields, etc., are not expressly mentioned, but several statutory provisions are applicable only "in populous areas" [id. §§2(b), 2(j), 5(a)], or within the limits of a city, town or village [id. §2(h)], or within an unincorporated village [id. §7].

Express authority for the Texas Board of Health Resources to adopt rules consistent with the intent and purposes of article 4477-1 in particular, and to establish standards and procedures for the management and control of sanitary and health protective measures thereunder, was not added until 1977 [id. §23(b); Acts 1977, 65th Leg., ch. 456 at, 1189], but we are of the opinion that the board already possessed implied power to do so. See V.T.C.S. art. 4419; Attorney General Opinion O-7131 (1946). Our concern is only with the

scope of particular statutory provisions and administrative regulations, i.e., whether agricultural locales and endeavors are embraced thereby. You are particularly concerned with promulgated requirements that certain drinking water facilities and toilet facilities be provided for workers.

The statute itself, section 10(a), specifies that all drinking water for public use "shall be free from deleterious matter and shall comply with the standards established therefor by the State Department of Health or the United States Public Health Service." This requirement is not limited to particular persons or areas; it applies alike to all. Similarly, section 10(b) applies to everyone, everywhere in the state. It provides:

> The use of the common drinking cup is hereby prohibited in this state. No drinking water shall be served except in sanitary containers or through other sanitary mediums. (Emphasis added).

Thus, article 4477-1, without the aid of administrative regulations, is sufficiently specific to make inconsistent practices on farms illegal and subject to fine. Id. §24.

The provision of toilet facilities on farms is another matter. The statute itself does not require that particular toilet facilities be maintained for agricultural workers located in non-populous areas, although section 4(a) does require that every premises occupied or used for residential, business, or pleasure purposes be kept in a sanitary condition. Conversely, the statute does mandate that "all human excretion in populous areas must be disposed of through properly managed sewers, treatment tanks, chemical toilets, approved privies, or by other methods approved by the State Department of Health." Id. §5(a). See also V.T.C.S. art. 4477-1, §6 (operators, managers or superintendents of public buildings, school houses, theaters, filling stations, tourist courts, bus stations and taverns to provide and maintain sanitary toilet accomodations).

Notwithstanding the failure of the statute to speak directly to the matter, we are confident the board of health (now the Texas Board of Health Resources, see V.T.C.S. art. 4418g) is empowered to reasonably promulgate rules and regulations defining the sort of toilet facilities necessary in rural areas or agricultural settings to keep the premises in a sanitary condition. V.T.C.S. art. 4477-1 §23(b). Whether "Occupational Health Regulation No. 2" does so is a different question.

The scope of "Occupational Health Regulation No. 2," first promulgated in 1957, is stated by the regulation itself: "This regulation applies to all industrial establishments." (Emphasis added). 25 Tex. Adm. Code §289.21(a). Its self-described purpose is

"to prescribe minimum environmental requirements for the protection of the health of employees in industrial establishments." (Emphasis added). 25 Tex. Adm. Code §289.21(b). An "industrial establishment" is defined as "an institution, a place, building or location related to manufactures or to the product of industry or labor." (Emphasis added). 25 Tex. Adm. Code §289.22. "Places of employment" is a term defined by the regulation as any place where two or more persons are directly or indirectly employed by another for direct gain or profit. The definition of "industrial establishments" refers to the limited definition of "places of employment" but does not incorporate it as a part of its own definition.

We must determine whether farms and other agricultural settings come within this regulatory definition of "industrial establishment." Administrative regulations are tested by the same principles of construction as statutes. Texas Liquor Control Board v. Attic Club, Inc., 457 S.W.2d 41 (Tex. 1970); Lloyd A. Fry Roofing Company v. State, 541 S.W.2d 639 (Tex. Civ. App. - Dallas 1976, writ ref'd n.r.e.). In this state statutory words in common use will ordinarily be read according to their natural, normal, and popular meaning unless a contrary meaning is clearly apparent from the context. See V.T.C.S. art. 10, §1; 53 Tex. Jur.2d Statutes §148, at 215. Applying these tests, it is our opinion that farms and ranches devoted solely to the production and harvesting of agricultural crops or livestock, and not to the industrial processing thereof, are not ordinarily institutions, places, buildings or locations "related to manufactures or to the product of industry and labor" within the meaning of the Texas Department of Health Resources "Occupational Health Regulation No. 2."

The definition of "industrial establishment" used by the regulation is derived from a definition of "industrial" quoted in Attorney General Opinion V-227 (1947). In that opinion, the state health officer was concerned about his authority to make health and sanitary surveys of "all establishments maintaining paid employees." He asked if the term "industrial establishments" as used in section 19(c) of article 4477-1, V.T.C.S., was broad enough to include every place of employment of any kind.

Attorney General Price Daniel advised him that not merely subsection (c), but all three subsections of section 19 of the act, and article 4420, V.T.C.S., must be read together to ascertain his authority to make such surveys. The latter statute, article 4420, authorizes the board of health or its agents to enter into, examine, investigate, inspect and view any location affected with a public interest. See Attorney General Opinion H-1126 (1978). Although subsection 19(c) of article 4477-1 expressly authorized the department of health to make health and sanitary surveys and studies of only "industrial establishments," the attorney general opinion advised that "[t]he term 'industrial establishments' constitutes no limitation on the kind of place which may be entered because of the all-inclusive

language of the laws specifying the powers and duties of the Texas
State Board of Health in the protection of the health and welfare of
the people...."  (Emphasis added).

The attorney general did not there say that the term "industrial
establishments" included all such places; he indicated that the board
of health possessed broad survey powers notwithstanding the limited
scope of that term.  In State v. Smith, 111 S.W.2d 513, 515 (Mo.
1938), the Missouri Supreme Court observed:

> The ordinarily accepted use of the phrase
> 'commercial establishment' denotes a place where
> commodities are exchanged, bought or sold, while
> the ordinarily accepted meaning of the phrase
> 'industrial establishment' denotes a place of
> business 'which employs much labor and capital and
> is a distinct branch of trade; as the sugar
> industry.'    Webster's    New    International
> Dictionary.  (Emphasis added).

The definition of "industrial" used in Attorney General Opinion
V-227 (1947) and thereafter adopted by the health regulation as its
"industrial establishment" definition was taken from the case of
Louisville and N.R.Company v. Fulgham, 8 So. 803 (Ala. 1891), as
annotated in Words and Phrases.  That case considered a statute which
allowed railroads to give special rates to "aid in the development of
any industrial enterprise in this state."  The court said: "It cannot
be disputed that 'industrial enterprises' includes all kinds of
manufacturing.  Mr. Worcester defines 'industrial' as relating to
manufactures or to the product of industry or labor."  Id., at 804.
Since the plaintiff was a miller engaged in "the manufacture of corn
into meal," the court held he was entitled to special rates.  In North
Whittier Heights Citrus Association v. National Labor Relations Board,
109 F.2d 76 (9th Cir. 1940), the court observed at 80:

> Industrial activity commonly means the
> treatment or processing of raw products in
> factories.  When the product of the soil leaves
> the farmer, as such, and enters a factory for
> processing and marketing it has entered upon the
> status of 'industry'.

Cf. Maryland Casualty Company v. Dobbs, 70 S.W.2d 751 (Tex. Civ. App.
- San Antonio 1934, writ dism'd) (one employed by company engaged to
spray orchards for insects not a farm laborer).  In Wayland v. Kleck,
112 P.2d 207 (Ariz. 1941), the Supreme Court of Arizona noted at 209:

> [M]any activities connected with the preparation
> of farm products for use or sale which formerly
> were carried on upon the farm or in intimate

connection with it, such as the making of butter, cheese and cider have gradually become specialized and removed from the farm, and when this is done such work may properly be regarded as thereby becoming industrial in nature rather than agricultural in the common conception of that term.  (Emphasis added).

See also In re Ginsburg, 255 F.2d 358 (3rd Cir. 1958); California Employment Commission v. Butte County Rice Growers Association, 154 P.2d 892 (Cal. 1944).

We think article 4477-1, V.T.C.S., plainly draws a distinction between "industrial establishments" and other kinds of commercial or business establishments, section 19, and that it impliedly draws distinctions between activities conducted in populous urban and non-populous rural settings.  While the Department of Health Resources possesses ample authority to regulate sanitary conditions in all establishments or places of employment located anywhere in the state, in doing so it must take into consideration the differences among them that the legislature obviously had in mind when the statute was enacted.  We think the department did so when it promulgated "Occupational Health Regulation No. 2."  It limited application of the regulation to "industrial establishments," and tailored the regulatory requirements -- some of which (particularly toilet facilities) would be wholly impractical to administer on most farms and ranches -- to establishments of that character.

It is our opinion, therefore, that article 4477-1, V.T.C.S., is applicable to farms, ranches and agricultural work places but that Texas Department of Health Resources "Occupational Health Regulation No. 2" excludes most farms and ranches from its intended operation.

## S U M M A R Y

Article 4477-1, V.T.C.S., establishing minimum requirements of sanitation and health protection, is applicable to farms, ranches, and agricultural workplaces, but "Occupational Health Regulation No. 2" excludes most farms and ranches from its intended operation.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Bruce Youngblood