**In re John T. GRIFFIN and Melody S. Griffin, Debtors.**

**John T. Griffin and Melody S. Griffin, Movants/Plaintiffs,**

**v.**

**FALCON OIL CO., INC., and First Eastern Bank, N.A., Respondents/Defendants.**

**Bankruptcy No. 5–93–00095.**
**Adv. No. 5–93–0112.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

April 3, 1995.

John Doran, Wilkes–Barre, PA, for John T. Griffin and Melody S. Griffin, debtors.

Gary M. Schildhorn, Philadelphia, PA, for Falcon Oil Co., Inc. defendant.

John O'Brien, Scranton, PA, for First Eastern Bank, N.A., defendant.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

This "Motion", pursuant to 11 U.S.C. § 506, is being treated as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001. John T. Griffin and Melody S. Griffin, Debtors herein, have filed this litigation in order to determine the security interests of Falcon Oil Company, Inc. ("Falcon") and First Eastern Bank n/k/a PNC Bank ("Bank"), both of whom claim a security interest in approximately Ten Thousand Dollars worth of gasoline located in an underground storage tank at the Debtors' place of business. While both Falcon and the Bank assert a first lien interest in the "inventory" of gasoline, Falcon has raised an affirmative defense that it has a superior lien in all equipment, computers, fixtures, gasoline pumps and shelving on the premises to the exclusion of the Bank.

The parties went to trial on June 21, 1994. Following that trial, they submitted a Stipulation of Facts to supplement the record and, thereafter, briefed the issues.

The real estate in question is owned by the Debtors, John and Melody Griffin, husband and wife. The property was purchased in 1965 and was operated as a conventional gas station and repair shop for seventeen to nineteen years. In about 1983, the Debtors built a large automotive store on the premises and tore down the gas station. Nevertheless, they continued to store and pump gasoline from the premises.

Even though the real estate was owned by husband and wife, the business was operated as a sole proprietorship.

The gas station is currently self-service and has eight pumps which are controlled by computers from within the building. The gasoline pumps are installed on concrete islands with three and one-half inch galvanized pipes serving as conduits to the gasoline stored underground. Minimal information on the ability to remove these pumps was offered at the time of trial.

Mr. Griffin testified that some of these pumps may have been installed fifteen years ago while others were installed about twelve years ago.

The mortgage in favor of the Bank was recorded March 18, 1988 together with a promissory note in the amount of Five Hundred Thousand Dollars ($500,000.00). Also filed on or about March 22, 1988 was a UCC–1 in favor of the Bank identifying an encumbrance in all inventory.

On September 24, 1991, the Debtors and Falcon entered into a certain supply agreement which authorized the entry of a confession of judgment against the Debtors upon default. Pursuant to that supply agreement, a mortgage in favor of Falcon was recorded September 25, 1991, which apparently represents a second mortgage on the premises.

Falcon entered judgment by confession against the Debtors on December 28, 1992 and simultaneously caused to be issued a writ of execution against the "entire contents of store, manual possession of gas pumps numbered 1 through 14 and underground tanks" as well as all other personal property of the Debtors.

Curiously, at trial and in post-trial briefs, there seems to be little dispute that the gasoline originally identified as the subject matter of the litigation was encumbered by the security interest in favor of the Bank. Notwithstanding that conclusion, the affirmative defense raised by Falcon has identified the real dispute as to who has the prime security interest in the underground storage tanks as well as the computerized gasoline pumps. In their briefs, the parties have focused on the issue as to whether these items are "fixtures" under Section 9313 of the Uniform Commercial Code as adopted by Pennsylvania. *13 C.S.A. § 9313(a)*.

■ The status of the secured interests asserted by the parties in bankruptcy are matters of state law. *In the Matter of Bollinger Corporation*, 614 F.2d 924 (3rd Cir. 1980). Since at least 1934, Pennsylvania has subscribed to what had been later referred to as the "assembled industrial plant doctrine". In *Central Lithograph Co. v. Eatmor Chocolate Co.*, 316 Pa. 300, 175 A. 697 (1934), the Supreme Court adopted the position that when a party makes a chattel a permanent part of a manufacturing plant, the chattel by force of law becomes part of real estate and is freehold. This decision was founded on the earlier case of *Voorhis v. Freeman*, 2 Watts & S. 116, 37 Amam.Dec. 490 wherein the quote is found, "Whether fast or loose, . . . all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold."

*Central Lithograph Co.* affirmed that this was true whether or not the "machinery can be removed without material injury to the building since this is not a controlling consideration."

The assembled industrial plant doctrine has been followed by a long line of state cases. *Gottus v. Redevelopment Authority of Allegheny County*, 425 Pa. 584, 229 A.2d 869 (1967); *First Nat. Bank of Mount Carmel v. Reichneder*, 371 Pa. 463, 91 A.2d 277 (1952); and *Land Title Bank & Trust Co. v. Stout*, 339 Pa. 302, 14 A.2d 282 (1940). The federal courts applying state law have too applied this same principle. *In re Ginsburg*, 255 F.2d 358 (3rd Cir.1958); *In re Taylor and Dean Manufacturing Co.*, 136 F.2d 370 (3rd Cir.1943). (Chattels placed in an industrial establishment for permanent use, and necessary to operation of the plant become fixtures and enhance a part of the real estate regardless of whether they are physically attached thereto.)

■ Simply stated, the first question becomes whether these gas pumps and underground storage tanks were placed on the establishment for "permanent use".

Falcon's brief argues that they were not permanent since the Debtors intended to install these items only "so long as the premises were used as a gas station".

This position is remarkably similar to that presented in *In re Ginsburg*, *supra* where the Third Circuit found the ". . . testimony that the questions and answers as to what might have happened to the machinery in the event of a sale of the building (which never took place) or the bankrupt's removal of his plant to a new location (which never took place) had no relation to the bankrupt's intention with respect to the machinery at the time he installed it in his plant, and it is that intention alone which is critical." *In re Ginsburg*, *supra* at page 363.

This facility was a gas station. There can be no dispute that a gasoline station sells gasoline from underground storage tanks. There further can be no dispute that in order to retrieve this commodity from its inconspicuous location beneath the earth, some retrieval system is absolutely essential. The court has been made aware of no other alternative but the use of gasoline pumps in this process, which pumps happen to be of the computerized variety in this case.

Although the assembled industrial plant doctrine has not been adopted uniformly by

the states,[1] it does represent the law of Pennsylvania which controls this case. Since we apply the assembled industrial plant doctrine, it does not matter whether the machinery was installed either before or after the giving of the mortgage. *Central Lithograph Co. v. Eatmor Chocolate Co., supra* at 305.

The Doctrine is not limited to manufacturing establishments. *Gottus v. Redevelopment Authority of Allegheny County, supra.* Physical attachment is unnecessary. *In re Taylor and Dean Manufacturing Co., supra.*

Considering the wealth of case law in Pennsylvania, the court is compelled to decide this issue in favor of the Bank by upholding their first lien with regard to the gasoline, storage tanks, gas pumps and computers in connection therewith.

Attached is our Order.

### ORDER

For the reasons set forth in the attached Opinion, judgment is hereby entered in favor of the Respondent/Defendant, First Eastern Bank, N.A. n/k/a PNC Bank, and against the Debtors, John T. Griffin and Melody S. Griffin, as well as the Respondent/Defendant, Falcon Oil Co., Inc.

The first lien interest in the storage tanks, gas pumps and computers in connection therewith are held by First Eastern Bank, N.A. n/k/a PNC Bank by virtue of their mortgage recorded in 1988. Further, the Bank's lien is superior on the gasoline by virtue of its filed financing statement.

---

1. See *Masheter v. Boehm*, 37 Ohio St.2d 68, 307 N.E.2d 533 (1974) and states identified therein as not following the assembled industrial plant doctrine.