## Corr's Estate.

338

Argued January 17, 1940.  Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Harry B. Berk,* for appellants, Nos. 382-386, and for appellees No. 397.

*David S. Malis,* with him *George Goodritz* and *J. Jerome Katz,* for appellant, No. 397.

*Samuel Feldman,* for appellees, Nos. 382-386 and 397.

OPINION BY MR. JUSTICE BARNES, March 25, 1940:

These appeals present two questions regarding the construction of the will of Bernard Corr, who died December 26, 1912.  The first is raised by the appeal of Joseph K. Seidle, the adopted son of testator's daughter, Katherine M. Gorman.  Her death on May 22, 1938, is

the reason for the present accounting by the trustees under the will.

Testator's will, dated May 21, 1906, set up identical trusts of $400,000 each for his four surviving daughters, named in the will as Catherine McCafferty (later Katherine M. Gorman), Annie B. Jones, Mary G. Smith, and Helen M. Duffy (now Helen M. Griffin). Each daughter was given a life interest, with power to appoint the remainder "to and amongst such of her said children and descendants of children as she may select, in such way and manner as she shall direct," and in default of appointment, the fund was given to her children or descendants *per stirpes*. Upon the death of a daughter "leaving no children or descendants of children her surviving, and having failed to exercise her aforesaid power of appointment," the will provided that the share of principal of the deceased daughter was to be distributed to the children and descendants then living of her sisters, such distribution to be made "per stirpe, upon the principle of representation."

Katherine M. Gorman, the deceased life tenant, had no natural-born children. In her will she purported to exercise her power of appointment in favor of Joseph K. Seidle, whom she called "my beloved son." She had adopted him by decree of the Orphans' Court of Philadelphia County, dated March 24, 1930, when he was approximately forty-one years of age. The auditing judge held that this appointment in favor of Seidle was ineffective, since the power could be exercised only for the benefit of natural-born children. The court in banc dismissed the exceptions filed by Seidle to the adjudication, whereupon he appealed to this Court.

Was it the intention of testator, in conferring upon his daughter this power of appointment, to include within the appointive class a person subsequently adopted by her? Appellant's argument is devoted largely to a review of the rights of adopted children in this state to inherit from intestates. We are concerned here solely

with the question of his rights, if any, under the terms of the will. Therefore *Cave's Est.*, 326 Pa. 358,[1] and other cases to the same effect, cited by appellant, can have no bearing upon this case.

Prior to the passage of the Wills Act of June 7, 1917, P. L. 403, it was the established rule that adopted children could not participate in testamentary gifts to "children": *Schafer v. Eneu*, 54 Pa. 304; *Puterbaugh's Est.*, 261 Pa. 235; *Yates's Est.*, 281 Pa. 178; *Freeman's Est. (No. 1)*, 40 Pa. Superior Ct. 31. As the testator died five years before the effective date of the Wills Act, this is the rule that must govern the interpretation of his will. But even if the Wills Act were applicable here, Seidle's position would be no better, because that statute modifies the former rule of construction only as to persons adopted *before* the execution of the will. See Section 16 (b) of the Wills Act.[2]

Appellant cannot bring himself within the appointive class by the extrinsic evidence, introduced at the audit but later rejected by the auditing judge, relating to his inclusion in the testator's household and to the strength of the affection that existed between him and his foster mother. Neither Seidle's testimony, nor the letters which he attempted to introduce, support the construction of the will for which he contends, particularly in view of the clarity of the testator's language. See *Yates's Est.*, supra. Moreover, in the present will there is nothing to show that the testator intended the word "children" to be extended beyond its usual import

---

[1] *Cave's Est.*, 326 Pa. 358, holding that an adopted child may inherit from the collateral kindred of the adoptive parents, deals solely with the law of inheritance and intestate succession.

[2] This sub-section provides: "Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person who were adopted *before the date of the will*, unless a contrary intention shall appear by the will."

of "natural-born children," and the fact that the gift to his daughter Catherine was phrased in exactly the same language as the gifts to his other daughters confirms our conclusion.

The second of the two questions involved is raised by the appeals of the five children of testator's daughter, Anna C. Jones.[3] In each trust created for a daughter, the gift over is made in the following words: ". . . to pay over the said trust fund of Four Hundred Thousand Dollars ($400,000) to and amongst the children or descendants, then living, of her sisters, the said fund *to be divided amongst such children or descendants per stirpe, upon the principle of representation.*" In addition to the children of Anna C. Jones, the three children of Mary G. Smith[4] are entitled to participate in the gift over of the share of Katherine M. Gorman. The appellants contend that the words of the will require a *per capita* distribution of the share among the living children of the sisters. This claim was rejected by the auditing judge, and the fund was divided into two equal parts, one of which was awarded to the children of Anna C. Jones, and the other to the children of Mary G. Smith.

The appellants urge that the phrases "per stirpe," and "upon the principle of representation," were intended to apply only to the gift to the descendants of the sisters, because the children are the first takers of the gift over, and cannot take by representation. We are convinced, however, that the testator did not intend to limit the meaning of these words so narrowly.

The expression "per stirpes" may be used in two dif-

---

[3] These children are Bernard C. Jones, J. L. Bryant Jones, Dorothy Julia Jones, Catharyne Rita Jones, and Charles James Jones, Jr.; Charles J. Jones, Jr. has assigned his interest under the will to his mother, Anna C. Jones.

Anna C. Jones was referred to in the will as "Annie B. Jones."

[4] They are Helen A. Greenhalgh, Mary G. Heuisler and Rita M. Smith Castner. Helen A. Greenhalgh and Mary G. Heuisler have assigned their interests to Nana E. Scott.

ferent senses; it may refer, first, to a "taking by right of representation," and second, to a taking "collectively by families and not equally as individuals": *Hogg's Est.*, 329 Pa. 163, 167.[5] It is clear that the testator used it in the second sense in the gift to the children of the deceased daughter's sisters, for otherwise there is no provision for the manner of distribution among them. In view of the careful draftsmanship of the will, and the manifest desire of the testator to direct the method of distribution of every gift, we cannot assume that he intended to make no provision for the distribution of this gift over among his grandchildren.

Appellants urge that the additional phrase "upon the principle of representation" modifies the words "per stirpe" and requires that they be understood in the first sense, to refer to a taking in lieu of a deceased ancestor. The mere addition of these words, so frequently and loosely employed by scriveners in conjunction with the phrase "per stirpes" cannot overcome the plain purpose of the testator in this case. The will in its entirety shows that he intended a stirpital distribution of his estate among his grandchildren. He directed that each of his daughters should select from her surviving children those who were to take her share, and he provided that his residuary estate should pass to his daughters or their issue per stirpes. Nowhere in the will is there a provision for distribution "per capita," and it is unlikely, therefore, that he intended the gift over of the share of a daughter who died without issue surviving to be distributed in this manner in the absence of an express provision.

Furthermore, if the testator did not intend the words "per stirpe" to refer to the gift over to the *children* (of

---

[5] For illustrations of a stirpital distribution among primary legatees, without reference to the decease of an ancestor, see *Osburn's App.*, 104 Pa. 637; *Miller's Est. (No. 2)*, 26 Pa. Superior Ct. 453; *Sipe's Est.*, 30 Pa. Superior Ct. 145.

the sisters), the inclusion of the children in the clause "to be divided amongst such children or descendants per stirpe," would be purposeless, because of the provision immediately preceding that they be paid the share of the deceased daughter, for this alone would have been sufficient to create the gift to the children, *per capita*. As we cannot assume that any of the words are meaningless, we conclude that the testator intended the words "per stirpe" to refer to the gifts to both children and descendants of the sisters, and the words "upon the principle of representation" to refer to the gift to the descendants, alone.

The court, therefore, was correct in awarding the share of Katherine M. Gorman in two equal parts to the children of Anna C. Jones and the children of Mary G. Smith.

The decrees are affirmed; costs in each appeal to be paid by the estate.