Holton Estate.

242

Argued November 19, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

 

*C. Brewster Rhoads*, with him *William F. Drake, Jr., George G. Chandler,* and *Montgomery, McCracken, Walker & Rhoads,* for appellants.

*H. Ober Hess*, with him *Norman H. Brown,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

*Alexander Brodsky,* in propria persona, guardian and trustee ad litem, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 18, 1960:

S. Pearce Holton, a lawyer and resident of Philadelphia, died on April 26, 1931. Under the terms of his will,—executed on March 16, 1929,—he created several trusts, a provision of one of which trusts is herein presented for construction and interpretation.

Under the eleventh paragraph of his will, the testator created a $400,000 trust which provided for the payment of the net income therefrom to the testator's son, Howard Holton, during his life, and, "at his death and until the expiration of twenty-one years" therefrom, "to divide the net income . . . into as many parts . . . as there shall be children of [Howard Holton] living at the quarterly distribution periods and children of [Howard Holton] then dead represented by descendants then living and to subdivide the shares falling to each set of descendants of a deceased child of [Howard Holton] amongst them per stirpes, upon the principle of representation, and to pay over to each child or descendants of a deceased child of [Howard Holton] then found entitled its share of such income . . ." Upon the expiration of the twenty-one year period, the trust principal was to be divided "into as many parts . . . as there shall be children of [Howard Holton] then alive and children of [Howard Holton] then dead, represented by descendants then living, and to subdivide the share falling to each set of descendants of a deceased child of [Howard Holton] amongst them per stirpes . . . and the shares thus ascertained to pay over to each child and descendants of a deceased child then found entitled, absolutely and in fee." If Howard Holton died "without leaving descendants him surviving or leaving descendants they should not survive to take principal", one-half of the principal of the fund was given to the testamentary appointee or appointees of Howard Holton and the other one-half of the principal was to be added to trusts created under the testator's will for John M. Holton,

Jr., and Mary Holton Globensky, children of testator's deceased son, John M. Holton.

Howard Holton married approximately ten years prior to the date of testator's will and approximately twelve years prior to the date of testator's death and of this marriage no children were born. Approximately three years *after* testator's death the Howard Holtons adopted a girl, Henrietta Duke Holton, and almost four years *after* testator's death they adopted a boy, Samuel Pearce Holton. When Howard Holton died on December 4, 1957, he left to survive him, in addition to his widow, these two adopted children.

At an audit of the trustee's account, the Orphans' Court of Philadelphia County denied the claims of the two adopted children to this trust fund. Exceptions to this adjudication were dismissed and a final decree entered.[1] From that decree the adopted children have appealed.

Under the provisions of testator's will, are these two children, adopted subsequent to the date of testator's will, to be considered as Howard Holton's "children" for the purpose of receiving initially the net income from the trust, and, if they survive the requisite twenty-one year period, of receiving eventually distribution of the principal of the trust? In resolving this question two inquiries must be pursued: first, to determine whether, within the four corners of this will, the testator evidenced *any* intent that Howard Holton's adopted children should be included in or excluded from the word "children" and, if such intent is evidenced, it will prevail; second, in the absence of any evidence of tes-

---

[1] This decree awarded one-half of the accrued income and one-half of the balance of the principal to the two adopted children as testamentary appointees under Howard Holton's will and a like amount to John M. Holton, Jr., and Mary Holton Globensky, children of testator's deceased son, John M. Holton, under paragraph fourteenth of testator's will.

tator's intent, expressed or implied, in the will, to determine the impact of section 16(b) of the Wills Act of 1917[2] upon the construction and interpretation of this will.

An examination of the language of this will reveals no manifest *expression* of the testator's intent in this respect; if such intent is present it must arise by *implication*. The appellants contend that an implication of an intent on the part of the testator to include adopted children within the word "children" arises both from the language of the eleventh paragraph of the will and from a comparison of the language of paragraphs eleventh and twelfth. The appellants argue that in the eleventh paragraph when the testator used the word "descendants" in juxtaposition with the words "child" and "children" he used such words synonymously, and, since we held in *Collins Estate*, 393 Pa. 195, 142 A. 2d 178, that the word "descendants" may include adopted children, *Collins* should control and the words "child" or "children" likewise be held inclusive of an adopted child or children. From a study of the language of this will it is apparent that *Collins* is wholly inapposite. Testator did not use "descendants" synonymously with "child" or "children"; it is clear that the testator's reference to "child" or "children" was to members of a third generation class while his reference to "descendants" was to members of a fourth generation class. Judge LEFEVER in the court below aptly stated: ". . . it is clear that the only rights of [the adopted children] are as *children or descendants of deceased children* of [Howard Holton]. They cannot by implication elevate themselves into a broader class described as 'descendants' . . .".

The appellants further contend that the testator's use of the word "issue" in the twelfth paragraph of the

---

[2] Act of June 7, 1917, P.L. 403, 20 PS Ch. 2, App. §228.

will—wherein he created a trust for the benefit of the widow and two children of his deceased son, John M. Holton—when compared with the testator's use of the word "descendants" in the eleventh paragraph is most significant. According to appellants, this significance lies in the fact that "issue" denotes only actual physical offspring, while "descendants" may include adopted children and the testator, a well trained lawyer, must have employed these different words to indicate an intent in the twelfth paragraph to provide for his deceased son's natural children and in the eleventh paragraph by the broad term "descendants" to provide for possible adopted children. Such a contention is without merit. The eleventh and twelfth paragraphs each provide dissimilar gifts for entirely dissimilar situations; it is obvious that the testator selected language which would be appropriate for each different situation. No significance can be attached to this variation in language.

Our examination of this will reveals no intent, expressed or implied, that the testator contemplated either the inclusion in or the exclusion from the word "children" of adopted children. The will is silent on the subject.

Our next inquiry is the impact, if any, of the Wills Act of 1917, supra, on the construction and interpretation of this will.

The legislature in the Wills Act of 1917, §16(b)[3] provided: "Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person who were adopted before the date of the will unless a contrary intention shall appear by the will."

---

[3] Act of June 7, 1917, P.L. 403, 20 PS Ch. 2, App. §228.

An examination of this statute clearly reveals the legislative intent: to *include* within the term "child" or "children" of a person other than the testator an adopted "child" or "children" provided, however, that such adoption took place before the execution of the will, and to *exclude* such adopted child or children if the adoption took place after the execution of the will. In *Corr's Estate,* 338 Pa. 337, 12 A. 2d 76, this Court considered a somewhat analogous situation. Corr died in 1912 leaving a will executed in 1906; he created a testamentary trust for his daughter for life and gave her a power to appoint among her "children and descendants of children"; he provided a gift over if she died "leaving no children or descendants of children". The daughter had no natural children but adopted a son in 1930, eighteen years after Corr's death. The daughter's attempt to exercise her power of appointment in favor of her adopted son was held invalid. This Court stated (p. 340): "Prior to the passage of the Wills Act of June 7, 1917, P.L. 403, it was the established rule that adopted children could not participate in testamentary gifts to 'children': [citing cases]. As the testator died five years before the effective date of the Wills Act, this is the rule that must govern the interpretation of his will. *But even if the Wills Act [1917] were applicable here, Seidle's position would be no better, because that statute modifies the former rule of construction only as to persons adopted before the execution of the will. See Section 16(b) of the Wills Act."* (Emphasis supplied)

In passing upon the applicability of and the interpretation to be given to the Wills Act, supra, we are mindful that: "Statutes are never presumed to make any innovation in the rules or principles of the common law or prior-existing law beyond what is expressly declared in their provisions: [citing cases]". *Rahn v. Hess,* 378 Pa. 264, 270, 271, 106 A. 2d 461; *Guthrie's*

*Estate,* 320 Pa. 530, 536, 182 A. 2d 248. Prior to the passage of the Wills Act of 1917, supra, our courts consistently held that an adopted child or children were not included within testamentary gifts or bequests to a "child" or "children": *Commonwealth v. Nancrede,* 32 Pa. 389; *Schafer v. Eneu,* 54 Pa. 304; *Commonwealth v. Ferguson,* 137 Pa. 595, 20 A. 870; *Commonwealth v. Henderson,* 172 Pa. 135, 33 A. 368; *Morgan v. Reel,* 213 Pa. 81, 62 A. 253; *Goldstein v. Hammell,* 236 Pa. 305, 84 A. 772; *Puterbaugh's Estate,* 261 Pa. 235, 104 A. 601; *Yates's Estate,* 281 Pa. 178, 126 A. 254; *Russell's Estate,* 284 Pa. 164, 130 A. 319; *Ashhurst's Estate,* 133 Pa. Superior Ct. 526, 3 A. 2d 218; *Freeman's Estate, (No. 1),* 40 Pa. Superior Ct. 31; *Corr's Estate,* supra; 70 ALR 621. See also: *Boyd's Estate,* 270 Pa. 504, 113 A. 691.

"The Wills Act of 1917 changed the prior case law by providing that, in the absence of a contrary intent appearing in the will, (1) a gift to testator's children would include any child adopted by him; and (2) a gift to the children of another would include any child adopted before the will was executed. If the child were adopted by someone other than the testator after the will was executed (even though before the testator's death), he was still excluded under the act of 1917." Bregy, Intestate, Wills and Estates Acts of 1947, pp. 3154, 3155.

In *Collins,* supra (p. 206), we interpreted section 16(b) of the Wills Act, supra, in the following manner: ". . . if the child or children are of a person other than testator only such adopted child or children adopted before the date of the will are included in the bequest or devise." In *Cave's Estate,* 326 Pa. 358, 359, Mr. Justice (later Chief Justice) STERN stated: ". . . The right of adopted children to inherit from a kindred of their adoptive parents is dependent entirely upon a statutory enactment . . . and courts tend to a strict

construction of such legislation". Section 16(b) is so clear and definite that only one conclusion is possible; since these two children were not adopted until after the execution of the will, in the absence of anything in the will to the contrary, such children are not included within the word "children" in testator's will.

Decree affirmed, costs on the estate.

***

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Is there any difference in law between the legal rights of a natural child and those of an adopted child? I personally do not see, in the enlightened jurisprudence of today, any distinction between the child which comes into the arms of its parents through the mystery of divine creation, inspired by human love, and the child who reaches those same arms through the medium of the law, guided by the same manifestation of love and devotion.

The law of Pennsylvania requires an adopting parent to provide his adopted child with the same maintenance, education and guidance which he gives to his natural child. The adopted child is bound to honor, respect and obey his adopting parents the same as a natural child is required to respond to the wishes of his natural parents. The adopted child and the adopting parents inherit and take, by devolution from and through each other, personal estate as next of kin and real estate as heirs, as fully as if the adopted child had been born into the family of the adopting parents.

Moreover, the full-fledged status of an adopted child in the family of the adopting parents is written not only in the books of the law but in the hearts of all mankind. Thus, in upholding the position of an adopted child we must keep in mind that an enlightened and sympathetic civilization insists that an adopted child must be as by descendants then living, the latter taking per stirpes,

solicitously guarded, as zealously protected, and as tenderly cared for as the natural born child.

An adopted child is not merely a creature to be loved and petted by his adopting benefactors. He becomes the medium for the perpetuation of the family, which is the backbone of society and the hope of intelligent progress in realizing the wholesome and peace-loving dreams of the human race.

Thus, it is with keen regret that I find the Majority of this Court denying to the two adopted children, who are the subjects of litigation in this case, the inheritance which I believe is rightfully theirs. It could be that the writer of the Majority Opinion, who is also the author of the masterful opinion in the *Collins Case*, 393 Pa. 195, is no less desirous than I of seeing Henrietta Duke Holton and Samuel Pearce Holton II inherit, through their adoptive father, the wealth of that father's father, but finds, athwart the broad avenue leading to that happy devolution, the Wills Acts of 1917, which he deems non-passable. On the contrary, I see an open highway beckoning adoptive-children into the land of full emancipation which a generous and fair-minded people have opened to them.

Let us take a glance at the facts which have generated this case which could have been, but unfortunately turns out not to be, the last blow of the hammer breaking the last link in the chain of technicality holding descendants in a bondage never intended by their testator-benefactors. On March 16, 1929, S. Pearce Holton of Philadelphia executed his last will and testament in which he created a $400,000 trust fund, the income of which was to be paid to his son Howard Holton for life. Upon Howard's death and for 21 years thereafter, the income was to be distributed among the children of Howard living at the quarterly distribution periods, and children of Howard then dead represented

upon the principal of representation. At the end of the 21 year period, the trust principal was to be divided among Howard's children then living and children of Howard then dead represented by descendants then dead, the latter taking per stirpes, upon the principle of representation.

The will further provided that if Howard died "without leaving descendants him surviving or leaving descendants they should not survive to take principal", then one-half of the principal of the fund was to go to Howard's testamentary appointee or appointees and the other one-half of the principal was to be added to trusts created under the Will for John M. Holton, Jr., and Mary Holton Globensky, children of testator's son John, who was deceased at the time Mr. Holton executed his will.

When Pearce Holton wrote his will, and even at the time of his death, April 24, 1931, Howard had no children. In 1934, however, Howard adopted a girl child, Henrietta Duke Holton, and in 1935, a boy child, S. Pearce Holton, II. Howard died December 4, 1957, and on the audit of the trustees' account after his death, his two adopted children claimed the principal of the trust fund. Their claim was contested by John's children who claimed one-half of the principal on the ground that adopted children cannot claim as beneficiaries of the trust principal.[1] The court below accepted this claim and thus granted one-half of the trust principal to John's two children and one-half of the trust principal to Howard's testamentary appointees.

This Court affirms that adjudication.

----

[1] Pearce Holton did make a generous provision for John's children, who are quite grown-up, so that it must not be assumed that if the adopted children would prevail in this litigation, John's children would be left empty-handed.

Section 16(b) of the Wills Act of 1917 provides: "Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person who were adopted before the date of the will *unless a contrary intention shall appear by the will.*" (Emphasis supplied).

As already stated, Howard's children were adopted after the date of Mr. Holton's will. If no proviso had followed the first part of Section 16(b) as above quoted, the adopted children would certainly find a closed door to the benefits of the Holton will. But the "unless" clause opens that door which the Majority feels is locked and sealed. I believe that an analysis of the language employed by Mr. Holton in his will reveals an open door policy to let in any children Howard might adopt as beneficiaries of his bounty.

When Mr. Holton drafted his will, he not only knew that Howard had no children but that, in all likelihood, his wife would bear him no children.[2] He also was aware, of course, of the possibility that Howard and his wife might adopt children. If he had intended to exclude adopted children from the effect of his will, it would have been quite a simple matter for him to so state.

Of course, I know that it is not enough to show that he did not exclude adopted children. In view of the specific wording of the Wills Act as quoted, the appellants (the adopted children) must show that Mr. Holton intended to make them his heirs. The proof of that intent is not lacking.

---

[2] John's widow testified that Mr. Holton was aware of a doctor's report to that effect and that he believed no children would be born of this marriage.

Mr. Holton made clear that the class of children who would qualify as beneficiaries of the will was not to be determined until the death of Howard. In the 11th paragraph of the will he provided for the payment of the net income from a $400,000 trust to his son, Howard Holton, during his life, and, "at his death and until the expiration of twenty-one years" therefrom, "to divide the net income . . . into as many parts . . . as there shall be children of (Howard Holton) *living at the quarterly distribution periods* and children of (Howard Holton) *then* dead represented by descendants *then* living and to subdivide the shares falling to each set of descendants of a deceased child of (Howard Holton) amongst them per stirpes, upon the principle of representation, and to pay over to each child or descendants of a deceased child of (Howard Holton) *then* found entitled its share of such income. . .." *Upon the expiration of the twenty-one year period,* the trust principal was to be divided "into as many parts . . . as there shall be children of (Howard Holton) *then* alive and children of (Howard Holton) *then* dead, represented by descendants *then* living, and to subdivide the share falling to each set of descendants of a deceased child of (Howard Holton) amongst them per stirpes . . . and the shares thus ascertained to pay over to each child and descendants of a deceased child *then* found entitled, absolutely and in fee." (Emphasis supplied.) If Howard Holton died "without leaving descendants him surviving or leaving descendants they should not survive to take principal", then, as already stated, one-half of the principal of the fund was to be distributed to the appointees of Howard Holton and the other one-half was to be added to the trusts created by the testator for the children of his deceased son, John.

Up to this point, it must be quite evident that Mr. Holton did not intend that the class of beneficiaries (that is, Howard's children) should be determined be-

fore Howard's death. This being so, it is obvious he was not limiting the scope of his will only to children in existence at the time he wrote his will. When Howard died, his two adopted children were Howard's children as much as any two natural born children would be. This conclusion is indisputable in the light of *Collins Estate*, 393 Pa. 195, where Justice BENJAMIN JONES said: "Through the legislative mandate an adopted child in 1921 possessed *all* the rights of a natural child, both as to its adopting parents and the collateral kindred of its adopting parents. As we said in Fisher v. Robinson, 339 Pa. 305, 310, 198 A. 81: 'Under section 16(b) of the Intestate Act of 1917, the adopted child then became *a member of the family* of the adopting parent.'" (Emphasis that of the Court).

Mr. Holton's will provided that the descendants of a deceased child were to take per stirpes, by representation, the interest of the deceased child. Accordingly, if Howard had had a natural born child and this child, grown up, had adopted children of his own, these adopted children would most assuredly take under the will because in the *Collins* case, supra, this Court held that the term descendants includes adopted children. Thus, this inescapable logical development produces an incongruous situation which it seems to me should be difficult for the Majority to explain away, namely, that adopted children of a deceased child (that is, the great grandchildren of Mr. Holton) may qualify as beneficiaries, whereas adopted children of Howard himself may not qualify. That is to say, remote adopted descendants can participate in the testator's estate, but adopted grandchildren, more natural objects of the testator's benevolence, may not participate.

If, in an attempt to explain away this anomaly, it is argued that at the time Mr. Holton drew his will, the *Collins* decision had not been promulgated, it is enough to say in reply that the *Collins* decision has

laid down a rule of interpretation of the word "descendants" used by the testator. Mr. Holton was an attorney, well versed in estate work, and the possibility of the interpretation of the word "descendants" could not have escaped him, especially in view of the Intestate Act of 1917 (in effect at the time Mr. Holton executed his will) which gives adopted children the same rights as natural born children.

Mr. Holton specifically stated that only in the event Howard died "without leaving descendants him surviving or leaving descendants they should not survive to take principal" that the principal would then be distributed one-half to Howard's appointees and one-half to John's children. Here, Mr. Holton was referring to Howard's direct descendants and not descendants of a deceased child as in the previous provisions of the will, and yet he made no attempt to limit the meaning of the term "descendants", nor did he refer back to the previous provisions which the Majority, and the court below, rely upon as circumscribing its meaning. In not so limiting the term "descendants," Mr. Holton clearly manifested his intention not to use the term "children" in the sense of natural children. If such had been his intent he would have also limited the term "descendants" by express limitation, or by reference back to previous provisions.

Instead of doing this, however, he provided that one-half of the principal was to go to John's children only if Howard did not leave "descendants." Since, as the *Collins* case tells us, "descendants" does include adopted children unless the contrary is shown, Mr. Holton must necessarily have used the word "children" in the same unlimited sense as he used "descendants," and, inevitably, adopted children must come within its scope.

It is also important to note, in analyzing the will, to ascertain Hr. Holton's intent, that in bequeathing gifts

to John's children, he used language different from that employed in providing for Howard's children. As already stated, John had predeceased his father, leaving his widow and two children. Mr. Holton left a $400,000 trust, with 1/5th of the income payable to John's widow "and the remaining net income therefrom and at the death or remarriage of the said Evelyn Harrington Holton, whichever event may first occur, the whole thereof until the expiration of twenty-one years from the date of the death of the last survivor of John M. Holton, Jr. and Mary C. Holton, children of my son, John M. Holton, to pay, in equal shares, to such of the children of my said son who shall be living at the quarterly periods of distribution thereof *and the issue* of any child of his who may then be deceased, *such issue* to take their deceased ancestor's share by representation; and upon the expiration of the period of twenty-one years from the date of the death of the last survivor of the children of my said son, John M. Holton." (Emphasis supplied.)

Thus, in providing for John's children Mr. Holton did not say that upon their death their *children* shall take, but that their *issue* shall take. In *Howlett Estate,* 366 Pa. 293, "issue" was defined as follows: "Issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent. . . Unlike a child or children whose relationship to it or their parent may now be created either by physical birth or by adoption, issue strongly connotes a blood relationship which arises solely by actual birth of the child to the parent.": *Collins Estate,* supra, p. 209.

And in disposing of the residuary gift to John's children in paragraph 14 of the Will, Mr. Holton again pointed out that the gifts were made with "remainders over to their descendants in the manner set forth in Twelfth Item of this my Will. . . ." Thus, Mr. Holton, by this reference back to the terms of paragraph 12 of

his will, was making clear that the term "descendants" was to be interpreted in accordance with the provisions of paragraph 12 of his will which employs the word "issue" and not "children", the word used in referring to Howard and his descendants.

Mr. Holton was not a layman employing legal language inexpertly. It can readily be assumed that he used the two different terms "issue" and "children," with a difference in mind. Thus, he had a purpose in speaking of John's children as "issue," and in referring to Howard's descendants as "children." He knew that the term "children" is much broader in scope than "issue" and is not limited to blood relationship.

Justice BENJAMIN R. JONES spoke pertinently on this very point in the *Collins* case: "If we examine carefully the legal and technical words which the testatrix employed in describing the recipients of her bounty we can only conclude that she selected such words with discrimination and care. . . . Furthermore, the power of appointment given by testatrix to her 'last surviving child' under paragraph 4(4) was *not* restricted to persons of the blood. Unless it be present in the word 'descendants' there appears to be no restriction of distribution to persons of the blood under this will. If the testatrix did not see fit to weave into the fabric of this will a restriction of distribution of her estate to persons of blood descent does the employment of the word 'descendants' compel that we do so? Neither etymologically nor legally does the word 'descendants' connote a blood relationship."

In the case before us, neither did Mr. Holton see fit to weave into the fabric of his trust provisions for Howard and his children a restriction of his estate to persons of blood descent. It must also be obvious from the above quotation that the word "child" or "children" would not be sufficient upon which to base such an intent. Justice JONES said further in *Collins, su-*

pra: "Under the law as it stood when testatrix died, an adopted child had all the rights of a natural child; when a will's terms are consonant with this broadened conception of adoption we will not, in the absence of any evidence, impute to testatrix a discriminatory attitude."

All the terms of the will before us are consonant with an intent on the part of the testator to benefit Howard's children, whether adopted or natural children. Thus, I do not see why the Majority should regard Section 16(b) of the Wills Act as a barrier shutting out Howard's adopted children from what is plainly given to them in the will. The clear intent of Mr. Holton, as expressed in the will, breaks down that barrier.

The barrier is further demolished when we take into consideration: (1) that at the time Mr. Holton wrote his will, Howard had already been married ten years and his marriage had been childless; (2) that John's widow herself (who is opposing Howard's adopted children in this litigation) testified that Mr. Holton believed, because there was a doctor's diagnosis to that effect, Howard's wife was unable to have children; and (3) that between the writing of the will and Mr. Holton's death, a period of two years, he never changed the provisions of his will providing for Howard's children. Since it was clinically established that Howard's wife would not bear children, it would have been a meaningless declaration (one not consonant with Mr. Holton's serious purposes) for him to make provision for Howard's children, unless, of course, he had in mind what actually occurred, namely, that Howard would adopt children.

Thus, these eloquent facts take this case into a summarization of the law as stated by the appellees themselves in their brief, namely: "In 1930, just a year before the testator died, it was summarized in the Ameri-

can Law Reports as follows: 'It is almost universally agreed that where a provision is made in a will for children of some person other than the testator, an adopted child is presumed not to be included *unless there is language in the will, or there are circumstances surrounding the testator at the time he made the will, which make it clear that the adopted child was intended to be included.*' Annot., 70 A.L.R. 621-622 (1930). (Emphasis supplied.) Presumably, this also was a part of the testator's background knowledge."

Conceding that the above summarization of the law constituted part of Mr. Holton's background knowledge, the result is manifest that he knew that if he displayed a contrary intent and if the surrounding circumstances substantiated a contrary intent, *that* intent would prevail. Therefore, he chose language in his will which clearly established, as already discussed, that children adopted by Howard after the execution of his will were to be considered Howard's children and beneficiaries of the trust provisions for them.

On this phase of the discussion it would almost seem that Justice JONES' language in the *Collins* case had been written to support my dissenting opinion here, i.e., "Appellants, even though their adoption took place subsequent to the execution date of this Will, were at the time the event occurred upon which a distribution of principal was directed to be made by the testatrix—Edith C. Perry's death—in the eyes of the law in exactly the same relationship to testatrix's daughter as though born of her body. In the absence of any language in this will from which an intent can be inferred to limit the meaning of 'descendants' to persons in the blood line and in view of the broad meaning of 'descendants' to hold that adopted children are excluded from the terms of this will would deprive them of the benefit of the statutory declaration conferring upon them *all*—not some—of the rights of a natural child.

Had testatrix's deceased child been survived by natural children, obviously they would have been 'descendants' of such deceased child. To exclude adopted children—occupying a status equating that of natural children—from the class of their adopted mother's 'descendants' on the basis of an assumed intent on testatrix's part to exclude from the word 'descendants' persons not of the blood is without basis either in the provisions of this will or in the law in effect when testatrix died. That appellants were not adopted until long after the effective date of the will does not compel a contrary conclusion. Testatrix foresaw that the time of taking by her children's 'descendants' would be in the distant future and she actually provided that only those 'descendants' would take who survived her child or children; certainly testatrix knew that her child or children legally could and actually might adopt children before the event of taking. Is it any less logical to conclude that testatrix intended that adopted children be included in the class of takers than to conclude that testatrix intended that only natural children or children of the blood be included in such class? Neither etymologically nor historically has the word 'descendants' acquired such significance that it points unerringly in this will—in the face of the legally accepted equation of status of an adopted child and a natural child—to an intent to exclude from a testatrix's bounty children legally adopted by her children."

It is true that in the case before us, we are dealing with the terms of section 16 (b) of the Wills Act and the interpretation of the word "children" rather than the word "descendants". Nevertheless, the reasoning in the *Collins* case is most pertinent to the issue of the testator's intent in the instant case and when applied to the admitted parts leads to but one conclusion, namely: That the testator fully intended to benefit children adopted by Howard after the execution of the

will, and that he had no idea of giving a different meaning to the term "descendants" of Howard than was given to the term in the *Collins* case.

Accordingly, I dissent.