**Wyman Estate**

*Marlyn F. Smith,* of *High, Swartz, Roberts & Seidel,* for accountant.

*Thomas E. Waters,* for claimant.

TAXIS, P. J., April 27, 1973.—The first and final account of Industrial Valley Bank and Trust Company, trustee, was examined and audited by the court on February 2, 1973.

The account shows a balance of principal and income for distribution of $6,768.48, composed of securities and cash as set forth on the front page thereof.

The transfer inheritance tax assessed has been paid.

The reason for the filing of the account is the death of Luella B. Wilson, life tenant, on December 19, 1971.

The trust terminates, and a problem has arisen concerning final distribution.

Maude Beatrice Wyman died on January 26, 1964. In her will, dated December 29, 1928, the present trust is created, as follows:

"34. Unto the Jenkintown Bank and Trust Company the sum of Seven Thousand Dollars ($7000) In Trust to invest the same and keep the same invested and to pay over the net income derived therefrom unto Mrs. Luella Wilson of Newman, N. Y., for and during the term of her natural life and at her death to pay and distribute the principal to her husband, if living, and if deceased then to her heirs in equal shares."

Luella (B.) Wilson survived decedent. By her will dated November 26, 1964, made after the death of decedent, she attempted to dispose of the present trust at her death through bequests of varying amounts, the largest being one of $4,000 to Blanche I. Wilson, the claimant herein. Luella B. Wilson also left the residue of her own estate to Blanche I. Wilson. Blanche I. Wilson is the sister of Luella B. Wilson's deceased husband, Lorrin Wilson. Luella B. Wilson's only natural heir is a niece, Eleanor Hayes; but Blanche I. Wilson claims the balance of this trust by virtue of her adoption by Luella B. Wilson on December 7, 1965, which was after decedent's death, and at which time Blanche I. Wilson was an adult.

Accountant originally took the position that the named legatees in the will of Luella B. Wilson were her "heirs" for the purpose of distribution of this trust. This being clearly erroneous, an amended petition for adjudication now requests final distribution of the fund to Eleanor Hayes.

The definition of "heirs" is set forth in section 14(4) of the Wills Act of April 29, 1947, P. L. 89, sec. 14(4), as amended, 20 PS §180.14(4). It is there stated that

"heirs" ". . . shall mean those persons . . . who would take under the intestate laws if the testator or other designated person were to die intestate at the time when such class is to be ascertained." This meaning prevails unless, as set forth in the introductory paragraph of the section, "a contrary intent" appears. Reference to section 8 of the Intestate Act of April 29, 1947, P. L. 80, 20 PS §1.8, reveals that: "For purposes of descent by, from and through an adopted person he shall be considered the issue of his adopting parent or parents and not the issue of his natural parents." On the face of these statutory rules, therefore, it appears to make no difference whether an adoptee is a minor or an adult when adopted, insofar as his qualification as an "heir" is concerned.

However, considerable new light has been shed on this whole important problem by the recent decision of the Supreme Court of Pennsylvania in Tafel Estate, 449 Pa. 442 (1972). Therein, the court faced the difficulty of reconciling existing decisional and statutory law which made certain distinctions between natural and adopted children for purposes of descent, with what the court conceived to be the more important policy of equating, in every way possible, the rights of adopted children to those of natural children. In Tafel, the court was dealing factually with the construction to be given the words "child" or "children," and not broader terms such as "issue" or "heirs," both of which may encompass children but which are not limited to them. We will deal with this problem below. As to Tafel itself, the Supreme Court first recognized that existing rules of law, exemplified by Holton Estate, 399 Pa. 241 (1960), and others, together with section 14(6) of the Wills Act of April 29, 1947, supra, established a presumption that a child adopted before the death of the testator was included in a testamen-

tary reference to "child" or "children," while one born after such date was not. Although section 14(6), supra, now section 2514(7) of the Probate, Estates and Fiduciaries Code of June 30, 1972 (Act No. 164), states only that a person adopted before the death of testator shall be considered the child of the adopting parent, and does not state that those adopted after shall not be so considered, the court did not principally base its decision in Tafel on this detail of language, but, after discussing the adoption acts of this State in detail, and pointing out that all of them, without exception, have mandated that adopted children are to have all the rights of a child and heir, the court concluded, at page 449:

"A fresh reading of the adoption statutes and their unequivocal legislative direction that adopted children be treated with equality with natural children compels us to revise our prior thinking, to disavow the dictum in Holton and, in the construction of the statutory clause 'unless a contrary intention appears,' to adopt a presumption that the testator intended to *include* any 'child' or 'children' who are adopted."

Perceiving, however, a danger in some applications of this generally salutary rule, the court also said, at page 454:

"The rule of construction herein announced applies where the adoptee or adoptees at the time of adoption were minors and not adults and does not apply where an adoptee or adoptees was or were adults at the time of adoption. By the restriction of this rule of construction to minor adoptions we serve and effectuate the purpose of preventing an adult adoptee or adoptees from being considered a testamentary 'child' or 'children' where such adoption is undertaken by a person other than the testator to prevent a gift over in default

of a natural 'child' or 'children' and thus, in effect, re-write the testator's will."

Since the statutory definition of "heirs," the language used in this case, only applies where no contrary intent appears, we believe that the rationale of the Tafel decision, including the exception to the general rule, governs. Although decedent's testamentary expression was "heirs" and not "children," it is nevertheless evident that, for the many years which passed from the execution of decedent's will to her death, Luella B. Wilson had no children to be her heirs. It is conceded that Blanche I. Wilson was an adult when she was adopted, and it is obvious that at the present time, 45 years after decedent's will was written, none of the participants in this controversy are young. Under these circumstances, we cannot believe that decedent would have intended that an adult, adopted child of Luella B. Wilson could or should be encompassed within the word "heirs," as she used it, nor do the policies of our adoption acts require such a result in the case of an adult adoptee. To allow this would, in the language of Mr. Chief Justice Jones in Tafel, countenance the rewriting of testatrix's will, not by herself but by a legatee, and moreover, after her death.

We, therefore, hold that the rules of Tafel Estate, apply to all cases involving after-adopted children in fact, whether or not the precise testamentary language involved is "child" or "children," or broader expressions such as "issue" or "heirs." The significant factor is the effectuation of the fundamental policies of, and the rights conferred by, our adoption statute, where these are involved; but where they are not, Tafel leaves us free to carry out the intent of the testatrix as it reasonably appears. In accord with this holding is Murdoch Trust, 23 Fiduc. Rep. 227 (1973), where Judge Ra-

hauser, of the Orphans' Court Division of Allegheny County, held that the Tafel decision applied where the settlor of a trust utilized the expression "lawful issue." He said, at page 231:

"We believe that the Tafel case swept aside any distinction between natural children and adopted children where there is nothing in the testamentary instrument to the contrary, and that a logical extension of the ruling in the Tafel case would likewise equate the rights of 'issue' and adopted children under a trust agreement providing for benefits to issue of a life tenant, in the absence of anything to the contrary in the trust instrument."

It is true that Murdoch Trust did not involve any application of the exception set forth in Tafel, but it is clear that once the reasoning behind that case is found applicable, the exception accompanies it as an integral part whenever the facts of the case require its application. Accordingly, the claim of Blanche I. Wilson is refused, and the balance for distribution in this trust is awarded to Eleanor Hayes, niece and heir of Luella B. Wilson.

Subject to distributions heretofore properly made and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication.

The account is confirmed, and it is hereby ordered and decreed that Industrial Valley Bank and Trust Company, trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, April 27, 1973, this adjudication is confirmed nisi.